# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6785 | **DATE** | 7/5/2001 |
| **CASE TITLE** | SCOTT COURTNEY vs. R.J.B. PROPERTIES, INC. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Third-party defendant/cross-plaintiff/cross-defendant, PM Realty Group's joint motion to enlarge discovery cut-off and to continue trial is granted in part and denied in part. Motion to enlarge discovery is granted to and including September 7, 2001. Continuance of trial is denied. Parties are to submit proposed rule 26 order by September 14, 2001. Enter Memorandum Opinion And Order. GSA's motion to dismiss and cross-motion for summary judgment are denied. PM's motion for summary judgment is denied.

(11) ☒ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 0 6 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | ED-7 FILED FOR DOCKETING | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 01 JUL -5 PM 5: 50 | date mailed notice | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SCOTT COURTNEY and SHEILA COURTNEY, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> R.J.B PROPERTIES, INC., ) <br> ) <br> Defendant/Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GENERAL SERVICES ADMINISTRATION, ) <br> ) <br> Third-Party Defendant/ ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PM REALITY GROUP, ) <br> ) <br> Third-Party Defendant. ) | No. 99 C 6785 <br><br> Judge John W. Darrah <br><br> DOCKETED <br> JUL - 6 2001 |

## MEMORANDUM OPINION AND ORDER

### I. PROCEDURAL HISTORY

Plaintiffs, Scott and Sheila Courtney, brought suit against R.J.B. Properties, Inc. (RJB), a former janitorial contractor at the John C. Kluczynski Federal Building (Federal Building) in Chicago, Illinois, for alleged negligence by RJB that caused Scott Courtney to slip and fall in the bathroom of the Federal Building. Subsequently, RJB filed suit against the United States (General Services Administration (GSA)) for contribution and indemnity. The United States then filed suit against PM Reality Group (PM), the mechanical contractor at the Federal Building. Thereafter, RJB

and PM filed counterclaims against each other. Presently before the Court is GSA's Motion to Dismiss for Lack of Subject Matter Jurisdiction, PM's Motion for Summary Judgment, and GSA's Cross-Motion for Summary Judgment.

## II. FACTS

PM entered into a contract with GSA to repair and maintain mechanical fixtures, including toilets and piping systems, at the Federal Building. (GSA's 56.1(a)(3) Statement ¶¶ 1,3). PM became aware of any condition on the premises through contract from the GSA, direct contact from a tenant, and/or identification of a condition by a PM employee. (Plaint.'s 56.1(a)(3) Statement ¶ 9). PM employees walked throughout the Federal Building to see the status of repairs and to identify additional work that may need to be completed. However, the 13th floor of the Federal Building had restricted access, and PM employees were not allowed access to the 13th floor without a Drug Enforcement Agency (DEA) escort. Access to the 13th floor by PM employees was denied unless the employee could identify a particular problem that they were sent to the floor to address. (Id., at ¶ 10; PM's Response to ¶ 10).

Federal Building tenants and/or the GSA requested maintenance work either by calling PM directly or calling the GSA Service Center. If the GSA Service Center was contacted, GSA would contact PM if a contractor was required. (PM's 56.1(a)(3) Statement ¶¶ 20-21; GSA's Response ¶ 21). If a call came into the GSA Service Center, it would be logged into a "Service Center Authorization Report" (Service Report). Emergency service calls and calls made directly to PM would not be included on the Report. (PM's 56.1(a)(3) Statement ¶ 24; GSA's and Plaint.'s Response ¶ 24).

RJB was the janitorial contractor responsible for the daily cleaning and maintenance of the

bathrooms on the 13th floor of the Federal Building. (Plaint.'s 56.1(a)(3) Statement ¶ 14). RJB employees were not responsible for maintaining the plumbing of the Federal Building. (RJB's 56.1(a)(3) Statement ¶ 9). Veronica Rodas (Rodas), an RJB employee, was responsible for the cleaning and maintenance of the bathrooms on the 13th floor. (Plaint.'s 56.1(a)(3) Statement ¶ 15). Rodas reported to Lavetrice Gant (Gant), a RJB employee. (Id., at ¶ 16).

Rodas noticed water on the floor of the south men's restroom on the 13th floor of the Federal Building approximately two times a week over a two-to-three month period prior to Scott Courtney's (Scott) fall. (Plaint.'s 56.1(a)(3) Statement ¶ 17). Rodas also received complaints from DEA agents of water on the floor of the bathroom. (RBJ's 56.1(a)(3) Statement ¶ 7). Rodas notified Gant of the water on the floor on several occasions. (Plaint.'s 56.1(a)(3) Statement ¶ 18). Gant notified Ed Burnam (Burnam), a GSA employee that oversaw the work of RJB. (Id., at ¶ 19; RJB's 56.1(a)(3) Statement ¶ 10). Grant informed Burnam of the water on the bathroom floor "probably once over the radio and a few times face-to-face." (Grant's Dep. p. 15). Grant did not specify if the south or north restroom of the 13th floor contained the water. Burnam responded that PM would be contacted. (Id., at p. 15).

Rodas noticed men wearing green pants and a white shirt working on the toilet in the handicapped stall of the south 13th floor bathroom on different occasions. (Rodas Dep. pp 23-24). She was unable to see what the men were doing in the stall. (Id., at p. 41). She believed the workers were PM employees. (RJB 56.1(a)(3) Statement ¶ 5). However, PM employees wore grey pants and a blue-stripped shirt, and GSA employees wore green pants and a white shirt. (PM's 56.1(a)(3) Statement ¶¶ 36-38). RJB, PM, and GSA employees had access to radios to speak to each other. At times, PM employees would hear RJB speak over the radio to GSA about a problem. (RJB's

3

56.1(a)(3) Statement ¶ 16; Ronald Anderson Dep. p.115). In addition, if a PM employee observed a problem, the employee had the authority to fix the problem absent a prior work order. (Plain.'s 56.1(a)(3) Statement ¶ 11).

Burnam testified at his deposition that he did not recall anyone informing him that a toilet leaked in a bathroom of the 13th floor of the Federal Building. (Burnam's Dep. p. 47). Raletta Ingram, a GSA employee, testified at her deposition that GSA personnel would not perform maintenance work and that the only contractor who would perform maintenance work at the time of the accident would have been PM. (Ingram's Dep. pp. 21-22). Ronald Anderson, PM's Chief Engineer at the time of the accident, testified at his deposition that PM employees were expected to inspect all of the hardware in a bathroom, including the fixtures and flushing mechanisms if the PM employees were in the restroom to make a repair to any of the fixtures. (Anderson Dep. p. 112).

DEA Agents William Kreig testified at his deposition that he observed water on the floor of the 13th floor restroom for a minimum of four to five weeks before Scott's accident. (RJB's 56.1(a)(3) Statement ¶ 13). DEA Agent Louis Palombella testified at his deposition that he observed water on the floor of the men's restroom on the 13th floor of the Federal Building for 6 to 8 weeks before Scott's accident. (Id., at ¶ 14).

PM employees fixed a clogged urinal in the south 13th floor bathroom on August 19, 1997. (RJB's 56.1(a)(3) Statement ¶ 12; PM's Response ¶ 12). On September 22, 1997, DEA Special Agent Scott Courtney (Scott) entered the handicapped stall in the men's south 13th floor restroom. (GSA's 56.1(a)(3) Statement ¶ 7). Scott alleges that he slipped and fell in water on the floor of the stall and suffered serious injuries. (Id., at ¶ 8). The Service Report does not indicate that a call was logged for a leaking toilet in the handicapped stall of the men's south 13th floor restroom. (PM's

4

56.1(a)(3) Statement ¶ 25). Prior to September 22, 1997, PM did not receive any calls from the GSA Service Center or from building tenants requesting service in a handicapped stall of the men's south 13th floor restroom. (Id., at ¶ 45).

## III. ANALYSIS

### A. GSA's Motion to Dismiss

GSA alleges that the claims against it should be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). GSA argues that GSA, as part of the United States, is immune from tort liability and that its immunity has not been waived under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671, 1346(b).

When the jurisdiction of the court is contested, "the party invoking jurisdiction has the burden of supporting the allegations of jurisdictional facts by competent proof." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979) citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). In making its determination whether subject matter jurisdiction exists, the court may look beyond the jurisdictional allegations in the complaint and view whatever evidence has been submitted on the issue. *Capitol Leasing Co. v. FDIC*, 999 F.2d 199, 191 (7th Cir. 1993). The court may weigh the evidence in order to satisfy itself that subject matter jurisdiction exists. Therefore, disputes over material questions of fact do not preclude the court from deciding jurisdictional issues. *Lumpkin v. United States*, 791 F.Supp. 747, 749 (N.D.Ill. 1992).

GSA first argues that subject matter jurisdiction does not exist under the contractor exception of the FTCA because any duties the GSA might have had as the owner of the Federal Building were contracted away to PM and RJB. RJB argues that GSA is misinterpreting the basis of the alleged liability. RJB contends that liability is based on allegations that Burnam, a federal employee, was

5

negligent in not informing anyone about the water on the bathroom floor after he learned of its existence. Therefore, even if all of the maintenance duties were contracted away, Burnam still had a duty to inform the contractor (PM) about the problem.

As a sovereign, the United States is immune from suit except where it consents to be sued. The terms of the consent define whether the court has jurisdiction. *See Leham v. Hakshian*, 453 U.S. 156, 160 (1981). The FTCA is a limited waiver of sovereign immunity, which makes the Federal Government liable to the same extent as a private party for certain torts of federal employees that are acting within their scope of employment. *United States v. Orleans*, 426 U.S. 807, 813 (1976) (*Orleans*). The FTCA does not waive sovereign immunity for torts committed by contractors with the United States. 28 U.S.C. § 2671; *Orleans*, 425 U.S. at 814.

In the instant case, it is without dispute that GSA contracted with private companies for the maintenance and cleaning of the restrooms. Therefore, any negligence regarding the actual maintenance and cleaning of the restrooms lies with the private companies; and GSA, as part of the United States, is immune from liability. However, GSA is not immune from liability based on the alleged negligent conduct of its employee in failing to perform his duty to give the contractor notice of a dangerous condition once that employee knows of the dangerous condition. Accordingly, the contractor exception of the FTCA is not applicable to the present case.

GSA also argues that it is immune from any allegations challenging GSA's decision to delegate safety responsibilities to RJB and/or PM, its decision of what safety requirements to impose on the contractors, or its decision as to the extent and frequency of GSA inspections of the contractors' work. RJB does not allege liability based on any of these arguments. Therefore, the Court need not address if such liability exists.

GSA also makes the argument that any contention that GSA should have informed PM of the water in the restroom is moot because PM had actual or constructive notice of the problem; therefore, dismissal is proper. GSA makes the same argument in its cross-motion for summary judgment. This argument does not pertain to subject matter jurisdiction but is dependent on a finding of lack of causation on the part of GSA. Therefore, it is not a proper issue for a motion to dismiss. Instead, the argument raises an issue of the existence of material fact; and it is, therefore, a proper argument for summary judgment. *See Crawford v. United States*, 796 F.2d 924, 929 (7th Cir. 1986).

For the reasons set forth above, GSA's Motion to Dismiss is denied.

B. <u>PM's Motion for Summary Judgment</u>

PM argues that summary judgment should be granted in its favor because it had no duty, as a matter of law, to repair the alleged malfunctioning toilet absent notice that such repair work was necessary. The other parties argue that summary judgment is not proper because, at a minimum, questions of material fact exist whether PM had constructive notice of the faulty toilet.

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). All the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (*Miller*). However, the nonmovant must still come forward with evidence establishing the elements of his claim on which he bears the burden of proof at trial. As such, he must establish specific facts that show there is a genuine issue for trial. *Miller*, 203 F.3d at 1003.

7

Notice of a defective condition on a premises can be shown through either actual or constructive notice. *Burke v. Grillo*, 590 N.E.2d 964, 970 (Ill. App. Ct. 1992) (*Burke*). Therefore, if the parties establish that a genuine issue of material fact exists whether PM had constructive knowledge of the malfunctioning toilet on the 13th floor, summary judgment must be denied.

Constructive notice is established where a condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known of the condition. *Burke*, 590 N.E.2d at 970. Notice of facts that would put a reasonable prudent individual on inquiry render authorities chargeable with knowledge of any fact that might be discovered through a reasonable investigation. *Pinto v. DeMunnick*, 523 N.E.2d 47, 50 (Ill. App. Ct. 1988). The regular occurrence of a problem makes it foreseeable, imposing a duty to take steps to prevent or control the problem, or to warn of the potentially dangerous situation. *Buford v. Chicago Housing Auth.*, 476 N.E.2d 427. 436 (Ill. App. Ct. 1985).

In the instant case, questions of material fact exist whether PM had constructive notice of the malfunctioning toilet and water on the floor of the restroom. Rodas testified that she observed water on the floor of the men's 13th floor restroom approximately two times a week over a two-to-three month period. She also testified that she observed PM employees working in the restroom. Her testimony that the workers had uniforms that matched GSA employees' uniforms and not PM employees' uniforms does not establish PM was not in the restroom, as argued by PM. Instead, it creates a question of material fact that is further supported by Ingram's testimony that only PM employees, not GSA employees, would conduct repairs in the restroom.

Furthermore, at least two DEA agents testified that they observed water on the floor of the restroom on several occasions for one-to-two months prior to the accident. PM employees

8

conducted repairs in the restroom approximately a month before the accident, and PM employees were expected to inspect all of the fixtures in the restroom if they were conducting a repair to any of the fixtures in the restroom.

Viewing all the evidence in favor of the plaintiffs, and the reasonable inferences that may be drawn from that evidence, questions of material fact exist whether PM had constructive notice of the malfunctioning toilet and water problem in the restroom. Accordingly, PM's Motion for Summary Judgment is denied.

C. <u>GSA's Cross-Motion For Summary Judgment</u>

In response to PM's Motion for Summary Judgment, GSA filed a cross-motion for summary judgment, arguing that PM's Motion for Summary Judgment should be denied because PM had a duty to repair any problems with the toilet and that it had, at a minium, constructive notice of the problem in the restroom. GSA then argues that "[f]or the same reasons, the court should dismiss the claims against the United States." GSA presents argument in support of denying PM's Motion for Summary Judgment but fails to state why the denial of PM's Motion for Summary Judgment requires dismissal of GSA from the suit.

However, as previously noted, in its Motion to Dismiss, GSA argues that if PM had actual or constructive notice of the problem, GSA should be dismissed because plaintiffs could not prove causation on GSA's part. Assuming that this is the basis for GSA's Cross-Motion for Summary Judgment, the motion is denied. As found above, questions of material fact exist whether PM had notice of the problem in the restroom. Therefore, questions of material fact exist whether causation

can be proven on the part of GSA.

## IV. CONCLUSION

GSA's Motion to Dismiss and Cross-Motion for Summary Judgment are denied. PM's Motion for Summary Judgment is denied.

Dated: July 5, 2001

JOHN W. DARRAH
United States District Judge